IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIELENA R., | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| LELAND DUDEK,[1] | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | |
|     Defendant | : | NO. 24-1006 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE      March 17, 2025

Marielena R. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration Commissioner's ("the Commissioner") final decision, denying her claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff filed a brief supporting her request for review, the Commissioner responded to it, and Plaintiff filed a reply. For the reasons set forth below, Plaintiff's Request for Review will be granted, and Judgment will be entered in Plaintiff's favor and against Defendant.

**I.    PROCEDURAL HISTORY**[2]

On March 11, 2021, Plaintiff applied for DIB and SSI, alleging that disability began on June 30, 2019,[3] from injuries sustained in a 2004 car accident. R. at 14, 261-64, 291-92. She

---

[1] Leland Dudek became Acting Commissioner of the Social Security Administration on February 16, 2025. Pursuant to Fed. R. Civ. P. 25(d), Mr. Dudek is substituted as Defendant in this suit. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this suit.
[2] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), Plaintiff's Reply Brief ("Pl.'s Reply"), and the administrative record.
[3] Plaintiff later amended her alleged onset date to January 21, 2020. R. at 14, 287.

complains of arthritis, and right foot and ankle pain, among other impairments. *Id.* The Social Security Administration ("SSA") initially, and upon reconsideration, denied Plaintiff's claim; hence, she requested a hearing. *Id.* at 14. On December 20, 2022, Plaintiff appeared before Administrative Law Judge ("the ALJ") Patrick Cutter. *Id.* at 39. Plaintiff, represented by an attorney, and vocational expert Michael Kibler ("the VE") testified at the hearing. *Id.* On February 17, 2023, the ALJ, using the sequential evaluation process ("SEP") for disability,[4] issued an unfavorable decision. *Id.* at 30. The Appeals Council denied Plaintiff's request for review, on January 10, 2024, making the ALJ's findings the Commissioner's final determination. *Id.* at 1-7. Plaintiff sought judicial review from this court, on May 31, 2024. Both parties consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

---

[4] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, s/he is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## II. FACTUAL BACKGROUND

A. <u>Plaintiff's Personal History</u>

Plaintiff, born on May 21, 1984, R. at 28, was 38 years old when the ALJ rendered his decision. She has a GED and completed coursework to become a medical assistant and phlebotomy tech. R. at 41. She is certified as a phlebotomy tech. *Id.* at 50. Plaintiff resides with her five children. *Id.* at 42.

B. <u>Plaintiff's Testimony</u>

Plaintiff testified that because of arthritis, her left knee is always swollen, and she cannot bend or straighten it. R. at 42. She engages in physical therapy and takes Tramadol for the pain. *Id.* at 43. Her right foot and ankle[5] are very stiff, and she has lower back pain. *Id.* at 44. Walking, sitting, and standing up to walk exacerbate her back pain. *Id.* Plaintiff testified that she could only sit or stand for approximately 15 minutes. *Id.* The longest that she can walk on a flat surface, without resting, is 10 minutes. *Id.* at 47. Plaintiff testified that she regularly uses two canes and an Arizona brace to assist with walking. *Id.* at 53. Inside the house, she uses a walker to prevent herself from falling.[6] *Id.* She cannot lift and carry more than 5-10 pounds. *Id.* Plaintiff stated that she cannot kneel, crouch, or crawl. *Id.* at 48.

Since she was 11 years old, Plaintiff has suffered from migraines. R. at 44. She has intense migraines two to three times a week; they cause nausea, blurriness in her left eye, and general sensitivity to light and sound. *Id.* at 58. Plaintiff takes two medications that provide "a bit" of relief. *Id.* at 45. Plaintiff stated that she suffers from depression and bipolar disorder, for which she also takes medication. *Id.*

Plaintiff has a current driver's license and drives to the grocery store. *Id.* at 42, 56. She is

---

[5] Plaintiff stated that this pain resulted from a 2004 car accident. R. at 52.
[6] Plaintiff testified that the canes and walker were prescribed by a doctor. *Id.* at 54.

responsible for the family's finances and meals, although her daughters sometimes assist with cooking. *Id.* at 49, 55.

C.  Vocational Expert's Testimony

At the December 20, 2022 hearing, the VE testified. R. at 39. Based on Plaintiff's file, she classified Plaintiff's past work as a fast-food worker, as light;[7] she performed it at the light exertional level for two employers, and at medium[8] for two other employers. *Id.* at 63. Her positions as a pharmacy technician and a lunchroom or coffee shop counter attendant were classified as light, performed at the light level of exertion. *Id.* at 63-64. Plaintiff's position as a medical assistant was classified as light, although the work was actually performed at a medium level of exertion for two employers. *Id.* at 63. Her position as a childcare attendant was classified as medium, but was performed at a light level of exertion. *Id.*

The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience, capable of light work, and able to perform the following:

> frequently stand, occasionally walk, never climb ladders, ropes, scaffolds, balance, crouch, or work at unprotected heights. Can occasionally climb ramps or stairs, stoop, kneel, or crawl, only occasionally use foot controls bilaterally, frequently reach, handle, finger, feel, push or pull bilaterally. Tolerate occasional exposure to temperature extremes, vibration, contact with moving mechanical parts, or operating motor vehicles. The individual requires a no loud noise environment. The individual can maintain concentration, persistence or pace for two-hour segments sufficient to perform routine two to three-step tasks or instructions.

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[8] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

*Id.* at 64. The VE responded that, based on the hypothetical, the individual could not perform Plaintiff's past relevant work. *Id.* The VE testified that such an individual could perform the unskilled[9] and light jobs of: (1) housekeeping cleaner, 78,000 positions nationally; (2) electrical accessories assembler, 39,000 positions nationally; and (3) garment bagger, 21,000 positions nationally. *Id.* at 64-65. The ALJ's second hypothetical added a restriction to work at the sedentary[10] level and use of a cane to ambulate. *Id.* at 65. The VE answered that such an individual could perform these jobs: (1) cable worker, 29,000 positions nationally; (2) final assembler, 14,000 positions nationally; and (3) food and beverage order clerk, 45,000 positions nationally. *Id.* The ALJ's third hypothetical included the previous restrictions but added the use of two canes to ambulate. *Id.* The VE replied that such a change would not impact available work, since the jobs previously identified were sedentary. *Id.*

The ALJ subsequently asked the VE to consider an individual who was under the limitations per the previous three hypotheticals, but, also, had ongoing psychological and physical symptoms that "interfere with the ability to focus, pay attention, and concentrate such that they would only be able to frequently maintain concentration, persistence, or pace." *Id.* at 65-66. The VE stated that such an individual would be unemployable. *Id.* at 66. Next, the ALJ asked the VE to determine further if the individual, under the first hypothetical, whose: (1) "symptoms interfere with their ability to do activity on a sustained basis . . . they can do some activity for a few minutes

---

[9] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[10] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

or a little while and then need a break"; and (2) would "need to take unscheduled breaks that total 60 minutes for the whole workday, . . . in addition to regular breaks" could work *Id.* The VE opined that such an individual would be unemployable. Finally, the ALJ asked whether an individual, under the previous three hypotheticals, but whose:

> symptoms interfere with their ability to maintain a regular routine such that they would be expected to be absent about 15 percent of the work time, that could be any combination of not just being off for a whole shift but needing to go in late or leave early because of symptoms.

*Id.* at 66-67. The VE opined that such an individual would be unemployable. *Id.* at 67.

### III. THE ALJ'S FINDINGS

In his decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2023.

2. [Plaintiff] has not engaged in substantial gainful activity since January 21, 2021 the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. [Plaintiff] has the following severe impairments: osteoarthritis of the knees, degenerative disc disease of the lumbar spine, degenerative joint disease of the feet and right ankle, post-traumatic arthritis of the right foot, migraines, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can frequently stand; occasionally walk; never climb ladders ropes, or scaffolds, balance, crouch, or work at unprotected heights; occasionally climb ramps or stairs, stoop, kneel, or

     crawl; occasionally use foot controls bilaterally; frequently reach, handle, finger, feel, push, or pull bilaterally; can tolerate occasional exposure to temperature extremes, vibration, contact with moving mechanical parts, or operating motor vehicles; requires a no loud noise work environment; and can maintain concentration, persistence, or pace for two hour segments sufficient to perform routine two to three step tasks or instructions.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. [Plaintiff] was born on May 21, 1984 and was thirty-five years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act from January 21, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. at 16-17, 19, 21-22, 28-29.

## IV.   DISCUSSION

A.   <u>Standard of Review</u>

     Judicial review of the Commissioner's final decision is as follows. The Commissioner's

findings of fact will not be disturbed if substantial evidence supports them. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of SSA*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion. *Id.* Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91. Nor is the court permitted to "impose [its] own factual determinations." *Chandler*, 667 F.3d at 359; *see Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.   <u>Burden of Proof in Disability Proceedings</u>

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she cannot engage in "any substantial gainful activity by reason of any

8

medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents a return to their past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.  Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, while Plaintiff could not perform her past relevant work, she, nevertheless, could perform other work, because suitable jobs in the national economy exist in significant numbers. R. at 29. Appropriate light jobs included those identified by the VE: (1) housekeeping cleaner, (2) electrical accessories assembler, and (3) garment bagger. *Id.* at 64-65. The ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), she was not disabled from January 21, 2020, through the date of his decision. *Id.* at 29. Plaintiff makes several arguments disputing the ALJ's

decision, including that: (1) the ALJ failed to properly apply Social Security Ruling ("SSR") 19-4p, 2019 SSR LEXIS 6, when evaluating her migraine headaches, and (2) the ALJ committed multiple errors when evaluating her symptoms and limitations. Pl.'s Br. at 1, 10, 15, 18. The Commissioner argues that the ALJ made no such errors. Def.'s Resp. at 6-7, 10, 12, 17. This court finds that the ALJ failed to properly apply SSR 19-4p, 2019 SSR LEXIS 6 when determining that Plaintiff did not medically equal Listing § 11.02. The ALJ's reversible error obviates the need to address Plaintiff's other arguments, which concern later steps of the SEP.

    1. <u>The ALJ Reversibly Erred When Applying SSR 19-4p</u>

Plaintiff argues that the ALJ failed to properly apply SSR 19-4p, 2019 SSR LEXIS 6 when deciding that she did not medically equal Listing § 11.02. Pl.'s Br. at 15. This court finds that, beyond citing SSR 19-4p, the ALJ failed to perform any of the analysis that SSR 19-4p requires. Therefore, this court finds he committed reversible legal error.

While there is no separate listing for primary headache disorders such as migraines,[11] SSR 19-4p indicates that migraines can medically equal Listing § 11.02, the listing for epilepsy, and, therefore, directs that Listing § 11.02 be used to evaluate primary headache disorders such as migraines. *See* SSR 19-4p: Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, SSR 19-4p, 2019 SSR LEXIS 6, at *16 (Aug. 26, 2019). In deciding whether a claimant's migraine condition meets the threshold established under Listing § 11.02, the ALJ evaluates several factors, including frequency, intensity, duration, and accompanying symptoms, as well as the limitations in functioning caused by treatment, its side effects, and the condition itself. *Id.* at *16-17. More specifically, the ruling identifies Listing § 11.02 paragraphs B and D as the most relevant to a medical equivalency determination; *i.e.*, whether a primary headache

---

[11] Migraines are considered a primary headache disorder. *See* SSR 19-4p, 2019 LEXIS 6, at *5-6.

disorder is equal in severity and duration to epileptic dyscognitive seizures. *Id.*

Paragraph B requires that such episodes occur once a week for at least three months,[12] despite adherence to prescribed treatment. SSR 19-4p, 2019 LEXIS 6, at *16-17. The Rulings state that, when evaluating whether migraines are equal in severity and duration to the paragraph B criteria, the following topics be considered:

> [(1)] a detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); [(2)] the frequency of headache events; [(3)] adherence to prescribed treatment; [(4)] side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and [(5)] limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.* at *17. Paragraph D requires seizures to occur at least once every two weeks for at least three months, despite adherence to prescribed treatment, and a marked limitation in one area of functioning.[13] *Id.* at *17. The Rulings direct that the aforementioned considerations related to paragraph B also apply when evaluating whether migraines are equal in severity and duration to the paragraph D criteria. *Id.* at *17-18.

This circuit requires that an ALJ set forth the reasons for his decision whether a claimant meets or equals a listing, and conclusory statements on the issue impede meaningful judicial review. *See Burnett v. Comm'r of SSA*, 220 F.3d 112, 119-20 (3d Cir. 2000). The ALJ stated that

---

[12] *See Tyson v. Kijakazi*, No. 1:21-cv-855, 2022 U.S. Dist. LEXIS 158146, at *30 (M.D. Pa. July 25, 2022) ("Courts analyzing migraine headaches under listing 11.02 have found that equivalence can be shown where migraines occur at these time intervals despite prescribed treatment.") (citing *Corey Z. v. Saul*, No. 18 CV 50219, 2019 U.S. Dist. LEXIS 205476, at *14 (N.D. Ill. Nov. 26, 2019)).

[13] While unnecessary for the disposition of this case, the court notes that the five areas of functioning are: physical functioning; understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing oneself. SSR 19-4p, 2019 LEXIS 6, at *18.

he was applying SSR 19-4p in determining that Plaintiff's migraines did not equal Listing § 11.02. R. at 21. However, the entirety of his medical equivalence discussion was comprised of two sentences that did not mention the factors SSR 19-4p identified as relevant to determining whether a claimant's migraine headaches medically equal Listing § 11.02. *Id*. Hence, he did not explicitly consider them. Also, the ALJ, in his cursory discussion, failed to acknowledge Plaintiff's testimony that her migraine frequency was, at best, two to three headaches each week for many years. *Id.* at 44. This failure constitutes reversible error. *See Brown v. Kijakazi*, Civ. A. No. 20-5391, 2021 U.S. Dist. LEXIS 221644, at *9 (E.D. Pa. Nov. 17, 2021) (noting that SSR 19-4p dictates that "ALJs must analyze migraine/tension headache conditions in a manner akin to epilepsy in their step three analysis" and finding that an ALJ's failure to do so constitutes reversible error) (citation omitted)). Since the error is not harmless, in as much as Plaintiff's migraine frequency suggests she might equal Listing § 11.02, remand is warranted.

2. This Case is Remanded

Upon remand, the ALJ shall explicitly and properly determine whether Plaintiff's documented number of migraine headaches during the relevant period medically equals Listing § 11.02. In doing so, he must expressly acknowledge that the documented frequency of Plaintiff's migraine headaches far exceeds the minimum requirements in Listing § 11.02, paragraph B. If the ALJ rejects Plaintiff's testimony about the frequency of her migraine headaches, despite compliance with treatment, he must identify substantial evidence in the record to justify that determination.

Plaintiff's remaining arguments concern: (1) the ALJ's evaluation of medical evidence in the record, and (2) how the ALJ's evaluation of that medical evidence adversely affected his evaluation of Plaintiff's RFC. Each of these errors relates to the later steps of the SEP. If the ALJ

determines that Plaintiff's migraine headaches medically equal Listing § 11.02, there will be no need to address subsequent SEP steps, because Plaintiff will be found disabled at step three. Hence, Plaintiff's remaining arguments will not be addressed at this time.

## V.   CONCLUSION

This court finds that the ALJ failed to apply SSR 19-4p. Accordingly, Plaintiff's Request for Review is granted. An implementing Order and Order of Judgment follow.